U.S. Department of Justice



*United States Attorney*
*Eastern District of New York*

CP:TJS
F.#2010R00397

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

September 21, 2010

<u>By Hand and ECF</u>

The Honorable John Gleeson
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  U.S. v. Mohammed Amadu
           <u>Criminal Docket No. 10-190 (JG)</u>

Dear Judge Gleeson:

     I write in response to the defendant's letter motion to preclude evidence, dated September 16, 2010.  The defendant seeks to exclude four pieces of evidence 1) pictures of United States currency taken from the defendant's computer, 2) text of a "rap" lyric found on the defendant's iPod, 3) a March 8 telephone call made by the defendant while incarcerated at the Metropolitan Detention Center, and 4) travel records relating to the defendant's previous travels to the United States.

     On September 17, 2010, at a pre-trial hearing, Your Honor adjourned the September 20, 2010 trial date to September 27, 2010 in order to allow the defense time to review the March 8 call and ruled that the call would not be precluded at trial.  For the below reasons, the government asks that the other evidence not be precluded.

<u>Argument</u>

1. Digital images of United States currency

     During a September 15, 2010 search of the defendant's computer, the government discovered four pictures showing United States currency, which are attached to the defense motion.  One of the pictures was time-stamped December 20, 2009 and three were time-stamped April 23, 2008.  The December 2009 picture shows a hand holding over $9,000 in cash.

The government does not anticipate offering any of these images into evidence in its case-in-chief, but reserves the right to do so if necessary to rebut a claim made by the defense, such as the defendant's lack of access to large sums of money. However, the government submits that if the defendant testifies it should be permitted to question him about these images and probe the credibility of his answers. The government believes that these images are also relevant to the defendant's claim that he is a student as the images would tend to undermine this claim.

The December 2009 image is dated approximately 3 months before the defendant's arrest and may reflect someone enticing the defendant to act as a drug courier. In addition, the April 2008 pictures may reflect the fruits of earlier trips in which the defendant has brought drugs into the United States. The government should be allowed to explore the background of these pictures.

2.  Text of "rap" lyric found on defendant's iPod

During a September 15, 2010 search of the defendant's iPod, the government discovered rap lyrics written by the defendant. The most recent was dated February 23, 2010, the date of the defendant's flight from Ghana to the United States and arrest for heroin importation.

The rap lyric reads:

> Still on the same mission/ tryna get that good money and I ain't Quiting/ I an out moves on gain digits /even ma balls ain't hanging lame niggas/ uh/ gotta keeping moving/ I am fucking problem and I never been Houston/ on a hot day we keep it chill just crusing / freestyle the whip off the top rooofless/ imma hustle till die/chasing money and imma keep running till fly/ I just made 20 thou and imma put it back inside/ double up take it back and I even press rewind/ crunch time flow just lil more refine/ canserous flow benine/ these rappers cant catch up they laggin from behind/ i stay kilLling em yeah adding demise/ i like to booze but wanna/ so a popp bottles go nutta/

Contrary to the defendant's assertions, this lyric has substantial probative value and should be admitted. The government believes that the defendant's knowledge will be the central issue in the case. It should, therefore, be allowed to introduce notes the defendant made contemporaneously with his

criminal activities that indicate his knowledge. This lyric is exactly such an account.

The lyric was written on the day that the defendant transported the heroin-containing suitcase to the United States and includes phrases that reflect the defendant's knowledge that he was being paid to transport heroin. The first couplet, "still on the same mission/ tryna get that good money and I ain't Quiting," matches a description of a courier's activities: to be paid to transport drugs. In addition, the defendant wrote the lyric in the present tense, most likely while on his flight from Ghana to the United States and while he was actively engaged in the "mission" it references. See United States v. Wilson, 493 F. Supp. 2d 460, 462-64 (E.D.N.Y. 2006) (admitting rap lyrics "because they describe activity that resembles aspects of the central crime alleged by the government.").

The lyric also goes on to indicate "I just made 20 thou." The government expects that its expert witness, William McAlpin, will testify that average payment for a heroin courier traveling from Ghana to the United States is $3,000 to $10,000 per kilogram of heroin. The defendant, therefore, was likely paid between $9,000 and $30,000 for bringing three kilograms of heroin. The "20 thou" referenced in the lyric falls squarely within this range. This lyric should, therefore, be allowed into evidence with the proper foundation.

3.   Travel records for the defendant's previous trips

The defense objects to the introduction of evidence relating to the defendant's prior trips to the United States, citing United States v. Afjehei, 869 F.2d 670 (2d. Cir. 1989). In Afjehei, the United States Court of Appeals for the Second Circuit held that the prior travel records of a defendant charged with importation of narcotics were not admissible to show the defendant's "familiarity with international travel" or to rebut the defendants claim that he was a college student. Id. at 673-74. The Circuit Court also found the prior trips inadmissible to show knowledge because the government argued that during those trips the defendant was also carrying narcotics and there was no "indication whatever that they were narcotics-related or were anything other than innocent travel." Id. at 675. None of those rationales is applicable here and the government will not make these impermissible arguments.

Here, the government offers these travel records to show that the manner in which the defendant booked the current trip is inconsistent with the manner in which he booked his

previous, non-criminal trips.  The defendant has traveled from Ghana to the United States four times.  (These records are attached and Bates-numbered in the top left corner.)  For the flight at issue in the present case, the defendant bought his ticket in cash less than 24 hours before the flight.  (See DOJ MA 000060.)  His previous two trips were each Buddy Pass tickets bought at steeply discounted rates with credit cards and purchased shortly before the flights.  (See DOJ MA 000068 and DOJ MA 000090.)  His earliest trip he also paid cash, however, he originally booked his ticket over two months in advance, though he later changed it.  (See DOJ MA 000108.)  The government is entitled to offer evidence of these trips to establish that not only is it unusual for the average traveler to purchase a $1264 ticket in cash the day before traveling, it is unusual for the defendant to do so based on his travel history.

## Conclusion

For the reasons set forth above, the government respectfully requests that the Court deny the defendant's motion to preclude the introduction of evidence.

>                    Respectfully submitted,
>
>                    LORETTA E. LYNCH
>                    United States Attorney
>
> By:      /s/
>          Tyler J. Smith
>          Assistant United States Attorney
>          (718) 254-6186

cc:  Heidi Cesare, Esq.